Good morning. Okay, Ms. White, if you'd like to begin. May it please the court, my name is Shelby White and I represent the appellants. The grant of qualified immunity cannot rest solely on an officer's after the fact statement that he subjectively felt he was in danger when this alleged subjective belief is contradicted by objective facts. There are three main issues I want to talk about during my time today. First, this Scott v. Harris, the idea that the road goes both ways in this sort of situation when we have video, objective video evidence. Second, even if the officer's version of events does, excuse me, even the officer's  they were in danger. And last, we need to look at how the district court misapplied the clearly established law test. First, video evidence has to work the same for both sides. Scott v. Harris is a classic situation where the plaintiff said, I wasn't doing anything, I never touched the cops, I never was fighting with them, and the video shows that obviously he was in a very rough-and-tumble fight with the cops, and so we've said when the plaintiff's version of events does not match up with the video evidence, we don't believe the plaintiff. And now we have the opposite scenario here. We have the officer saying, no, I was very much in fear for other officers being behind the car. And then everyone looks at the video and we said, there's no one behind the car, and the car's going three miles per hour, it's going slower than walking speed. And we have all those officers in their depositions look at the video testimony again after the fact and they say, yeah, you're right, no one was there, no one was in danger. And so we have objective evidence that there is no danger. Yes. We have objective evidence that there is no danger when we watch the video. And we have the officers agreeing after the fact that there was no danger. You can see that at some point during the course of the video, let's say leading up to however many minutes are until the first shots, at some point there was one or more officer behind the vehicle? Yes. Yes. So at the very beginning when the car engine is turned on and the brake lights come on, two of the officers, Kimball and then not Hess but the other one who's named Hopkins, I think. Hopkins are behind the vehicle. And then Hopkins, when the car moves back a little bit, hits the cop car. Then the car moves forward, hits the fence. And when the car starts to move forward, Hopkins says to Kimball, let's move over, and they both move over. And then everyone ends up behind the cop car before the cop, before Ms. Dawes ever starts moving backwards for the final time. There's no doubt that there were no officers behind the car when the car, when the shooting started. Correct. There is no doubt. That, when I'm talking about the objective evidence, there, there is no, there's no dispute in the record in the. The officers in the deposition admitted that. There just isn't any evidence that would support. Correct. Yes, the officers have all admitted that there was no evidence supporting there being any danger. This is because officers cannot use a subjective understanding of the events to create a qualified immunity when the actual facts don't support qualified immunity. Can't, you can't credit their subjective belief that I was in danger over unbiased neutral evidence that they weren't in danger. And at Baker v. Coburn, one of the recent cases out of this court speaks to that, saying quote, the objective reasonableness of an officer's fear is dependent on the acceptance of their account of the shooting, and here we have to credit the video evidence account of the shooting. And so you can't, you can't be acting as a reasonable officer in firing a shot if the evidence shows there was no reason for you to be firing and there was no danger posed. Counsel, suppose, we're obviously not supposed to use 20-20 hindsight. Yes. Right? The Supreme Court has been overwhelmingly emphatic about that. And we're also not supposed to study the various events that lead up to the engagement of force, right? We're supposed to start our analysis where Officer Hess fires the first shot. So let's just imagine though, we're in a different world where those rules don't apply, and you and I are watching the video together, or suppose your officer Hess, what would you have done? Well, so we have four other officers that don't shoot. And so that's, we know what a reasonable officer would have done. A reasonable officer wouldn't have shot. We also- Hold on, hold on, that's tricky, right? For two reasons. One, it doesn't answer my question, and two, one officer does shoot, right? So the fact that others don't doesn't necessarily prove anything. I'm trying to ask you, just let's pause for a second, zoom out of this case, and let's just think about it, right? It's nighttime, we think the car's stolen. You and I are two officers, we're there, we're looking at this, the car's backing up, right? We've been trying to get their attention, we're blaring the siren, identifying ourselves, etc., etc., etc. We don't know, obviously, what the car is doing. We don't know why our commands have been ignored. All we know is that the car is refusing over and over, whoever's driving the car. We don't even know that, right? We think we know, but we have no idea, really. What do you do, do you just let them drive away? Yes. Yeah, that's what I was assuming that's the answer. And what's the Fourth Amendment case that says let them drive away? So I think Edwards and I think Little are both very, Edwards in particular is very closely to being on point, because it is the same scenario of an officer saying I was protecting someone else. And then by the time he shoots, the car has already passed the officer he was, quote, protecting. Right, so at that point, right, the car's gone. Yes. And Little, obviously, doesn't involve any of this, right? So that's a hard, I mean, it involves force, but it doesn't involve the car driving away. Yes, Little is a car driving away. Sorry, but I mean, what I mean to say is that it's not like we say the Fourth Amendment standard is let the car drive away. I would respectfully somewhat disagree with that. I think my understanding of the standard is that if a felon is fleeing, but they are not threatening anyone by fleeing, it's not endangering anyone by fleeing. You have to let, you don't get to shoot them to prevent them from fleeing. The only reason, the only time you are allowed to shoot someone, the deadly force standard requires a threat to yourself or to another officer or member of the public. If there is no threat, you cannot shoot. And so that actually, to kind of skip ahead, gets into the clearly established law analysis and kind of the issue I have with the way the district court has applied the clearly established law. You may have said something about this, but is it so that the officer in this, he had, he fired two series of shots. Has fired one shot. Or two rounds of shots, yes. Is it true that in between those two series, the car always would stop and he could see that this dog was disabled and was not holding on to the steering wheel? Yes, that is correct. Has fired, what, six more shots, or I forget how many? Yes. I think he, Hess fires 12 shots total, and I think it's six and six. And Kimball fires one shot during the first round of shots. Yes. What the district court has done in applying the clearly established law standard. The district court assumes that there was a danger. And therefore, then the district court looks at clearly established law talking about cases where how close are you to the car, how fast was the car going. And ultimately determines that those, those cases show that the law is not clearly established that an officer could not shoot in this scenario. I have two issues with that. First, I think, as I mentioned earlier, Edwards and Little are the controlling clearly established law here. Edwards postdates our case, but says that the law was already clearly established. And second, the issue is there is no danger. And there is no set of clearly established law that would support shooting when there is no threat. You cannot shoot just because you feel like it, and you cannot shoot just because someone is fleeing if there is no danger. And if you look at the, the city of Houston's investigation after the fact, they point out that when the car is backing up, it could have kept backing up out of, I mean, they've actually blocked off the exits to the parking lot. But the, the car could have continued to back up straight and would have just passed the officers and gone to another side of the parking lot. I've never understood that because I, what, I watched the video of the officers before they engaged, the, the second group of officers, as they're walking through the parking lot. Mm-hm. They're coming from where the, the, the path where the car would have gone backwards. And there's clearly cars there. I, I don't understand how they, the car could have kept going backwards. It would have run into like, unless I'm misunderstanding my spatial orientation. There's like six cars under that carport thing. And I, where would the, the car would have only been able to sort of do a, a Y turn and then go out towards where Officer Hess was standing. Am I misunderstanding? I'm gonna try and spatially orient myself to explain this properly. But if the car is parked in the corner here, there is a car park underneath here, but there is an aisle. Yes. Right. Yes. And so he could have just backed up down the aisle and all the officers are right here. Right. So within, I don't know, two feet of the various officers in the car. But it's not, I, I just wanna make sure I understood this because I saw the same thing and I was confused by it. The, the, the allegation is not that the car could have backed up out of the parking spot and just kept on going backwards. Yes, that is my understanding. That's my understanding of the orientate, the way the parking lot is. I thought we were saying that there was a line of cars in the path of the backing. There is a line of cars and there is a path along, there is a drive lane along the fence. And so our car is in the back corner along the fence. There is a drive lane to the back and then the rest of the carport starts. Thank you, I appreciate it. I'll go back and watch the video. I didn't see that lane. It looked to me from the axon cameras that there was just no way for the car to keep going backwards. It would have had to have pivoted and then gone forwards. Yes, and that, my understanding from the Houston Police Department's ultimate finding that, that wouldn't have to be the case, and then from watching the video. But I, that was what I thought I saw in the video, but I'm not. Obviously we have an objective set of evidence to determine one way or the other. So when we look at the clearly established law, what we're looking at is cases on the fringe, on the fringe parameters of what is appropriate. The quote is that we are looking for a reasonable, we are protecting officers who make reasonable but mistaken judgments about open legal questions. And the issue here is that there is, there is no danger, so there is no open legal question. You cannot, you cannot shoot when we all are able to look at the evidence and determine that there was no danger. And so that, what we have done by presenting the subjective evidence is we've created a fact issue, and if the police officers want to come in at trial and talk about tunnel vision or talk about, you know, kind of how they make split second decisions and things like that. That is something they can raise at trial, but when we have objective evidence that there is no danger, that is, end of story, that's a fact issue, and so we are not, summary judgment is not appropriate. So let me ask you, on the record we have before us, which of course does include the videotapes. Is there any record evidence that either Hess or Kimple looked behind the car or that they could see behind the car before they began shooting? Yes, there is, here we go. Hess testified that nothing prevented him from seeing behind the vehicle, he just didn't look. And that is in the record at page 1031 in his deposition testimony. And I think, I don't have the direct quote from Hess, or excuse me, from Kimple, but I believe he says something similar, that both of them acknowledge that there's nothing that prevented them from seeing it, they just chose to focus solely on the vehicle, so. And with that, I will rest on my brief for the rest of the issues, and yield the rest of my time to the court, and we would ask that they remand. Thank you, Counsel, you've saved time for rebuttal. We will next hear from, according to the docket sheet here, the city of Dallas, Ms. Gowen. And you've got three minutes, and then the balance goes to Mr. Goldstucker. May it please the court. My name is Lindsay Wilson Gowen, and I represent the city of Dallas, Texas. The appellants have asserted a Manel failure to train claim against the city. One of the required elements of a Manel claim is the existence of an underlying constitutional violation. It is settled law since the Supreme Court's 1986 decision in the city of Los Angeles versus Heller, that if a court or a jury finds that no constitutional violation occurred, then all Manel claims against the municipality fail as a matter of law. The appellants have conceded this issue, both before the trial court and in its briefing before this court. Therefore, if this court affirms the district court's finding that no constitutional violation occurred, then the city of Dallas asks this court to affirm summary judgment in favor of the city as well. If the court has no questions, I will cede the remainder of my time to Mr. Goldstucker. If the court finds there is a constitutional violation, then that issue of the city will have to be remanded to the district court for further proceedings. The finding of summary judgment in favor of the city of Dallas would have to be overturned as well. In other words, if the city has no defense that they were not the moving cause of the bombings? We would certainly defend that in the trial court again, but we'd move for summary judgment after the finding that there was no constitutional violation. I'm sorry? You're saying the case would still have to be remanded for that? That's correct, sir. All right. Thank you. Thank you. All right, Mr. Goldstucker. Thank you, Your Honor. May it please the court. My name is Mark Goldstucker. I represent the Appellees Christopher Hess and Jason Kempel, and I will respond to the appellants, but also will address more of whether there was a violation of a constitutional right involving excessive force, and whether that was a clearly established right if, in fact, there was. First of all, the video evidence that we're talking about here in the Scott case that was cited, that case refers to a blatant difference in the video and the officer's testimony or recollection of what occurred, where we had a situation where the officer was talking about excessive force. Actually being involved in a fight and all these things, and the video showed none of that. So we have a difference here because the videos here are essentially, while they are objective in what they show, they are essentially, in this case, 20-20 hindsight because we are dealing with the officer's knowledge and the officer's perceptions while these videos are going. No, the videos, I mean, reviewing those videos and saying, but look, the officers weren't in danger. I'm saying that's akin to some type of 20-20 hindsight, or as the district court referred to it. No, and I'm sorry, I don't mean to say it is. I'm simply saying in this case, what we're talking about would be the officer's knowledge, beliefs, and perceptions at the time. We have these body cameras that are sitting and focused straight ahead without moving, unless the person wearing the camera moves. But at the same time, we have the officers able to look around and see things other than what the video is recording or being focused on things other than what the video is recording. But the two shooting officers have both testified that they didn't know that the other officers were behind the dog's car, and those two officers have testified that they weren't behind the car when the shooting occurred. That's correct, and that's what, I guess that's where I'm coming from on the, on comparing it. Is that both officers also testified that at the time of the shooting, they believed that there was someone still behind the vehicle in danger, and it was only after the events and after they saw the video that they came to realize that no one had remained behind the vehicle. That happened in very quick succession, and that's really what I'm referring to. They're not, they did not testify that at the time they fired, they knew no one was back there. Why would that not be a triable fact, the reasonableness of their belief based on all the evidence? Why would that not be a triable fact? Why is it one that we should accept for purposes of summary judgment based on qualified immunity? Your Honor, it's given all the facts and circumstances, and including footage that just immediately preceding that, there had been individuals behind. The fact that the car had reversed, then gone forward into the fence, reversed again, and had hit the officer's car at one point when first reversing. And the officer testified that, or officers, that at that point, the focus was not on whether anyone remained behind the car or had moved out of the way. The focus was on the driver of the car, and that's when the officer fired, or officers fired. It wouldn't have been while they were looking elsewhere. So their beliefs and perceptions, I believe counsel for the appellant said that we're not talking about qualified immunity. It doesn't address the officer's subjective understanding or belief. And that's true, but it does take into account what the officer knew at the time, and whether the officer's perception was based on that knowledge. And in this case, given what the officers knew at the time, that this was a very rapid, fluid, evolving situation with this driver going. The officer testified that they knew that the other officers, the Hopkins and the others, were in immediate danger, were actually behind the car while the car was moving, and therefore gave them the right to shoot, to kill the driver, which is what happened, apparently. If I understood, the officers testified that at the time they fired, they believed there was someone behind the car. They did not have any evidence, any powerful evidence to base that on. Well, it's like the other, if the video showed that there were officers there. In our jurisprudence, an officer must be able to say that he saw something that told him that another officer was in immediate danger, so he had to act. That's correct, and the officers did testify to that, that they saw individuals behind the vehicle, other officers. At the time they were shooting. At the time, no, they saw individuals just immediately prior. They looked into the vehicle when they aimed their weapons, and when they fired, there were no, no one was behind the vehicle any longer, but they only came to realize that after all this when they reviewed the videos. They still had that belief that there were individuals back in the path of the vehicle. They did not watch the individuals behind the vehicle while blindly shooting. They had to turn their attention and their focus to where they were aiming the weapons, which precluded them from continuing to see behind, and that's why we're talking about having this fluid, quickly evolving situation. Did the magistrate judge find that if they really intended that, that they were lying? I'm sorry, I didn't— Did the magistrate judge find that Mr. Hiss and the other officer who fired, if they said they saw or they believed somebody was behind the car, that that was a lie, that they did not intend to be telling the truth at that point? Did I misread the magistrate judge's opinion? I'm sorry. Well, no, the magistrate judge, yes, the magistrate judge did make findings different than the district judge, and in her recommendation that the summary judgment be denied, she made those findings. Of course, that would be . . . She saw and heard the witnesses, right? She saw, I'm sorry? She saw and heard the witnesses. The district judge did not. Is that right? No, the magistrate judge did not. She did her findings based on the same evidence. And her determination about the . . . Was there a lot of testimony before the magistrate? No. There was just the record, the same record that the district court had that we have here. I'm sorry, the district judge didn't review the same record as the magistrate? Yes. I'm sorry, and I might have not understood. The magistrate judge had the same record that the district judge then had and that you now have, but there was no hearing before the magistrate judge. She saw and heard the officers testify. The magistrate judge? Yes. No. Not live or in person, only through the written record. So it's just a straight summary judgment . . . Yes. . . . referred to the magistrate for an R&R . . . Yes. . . . and then magistrate made the recommendation and then the district judge got the same record and came to the opposite conclusion. Correct. Yes. Let me ask you also, your opponent in response to one of Judge Dennis' questions characterized the shots, I think from Hess, if I'm not mistaken, as being two rounds. Do you agree with that? Well, yes and no, if I may. The magistrate judge talked about that in her recommendation, but in, I believe, the newest case that was sent to the court recently, the Baker case, that was an issue that there was a . . . I don't know how long the gap was . . . The government conceded it. But it was enough of a time for shooting while they were approaching to then shooting as they left. The defendants conceded that it was two rounds of shots . . . Right. . . . and that's why I'm asking since you all set the 28-J on that case. And, Your Honor, no, not to the extent that it would cause any issue to be raised about the appropriateness of first round versus second round. It was much closer in time and much more involving the same locale, location, and circumstances. It would probably be more accurate to say there were two series of shots. In other words, Mr. Hess fired . . . There was a delay between one series and a second series. I confused that in my question. I apologize. I didn't . . . That would have been on me. . . . remember saying rounds, and if I did, I think that would be maybe a little misleading. And I may have misstated your question. What I wanted to know is obviously since Baker came out, one of the features of that case is that there were two separate shooting intervals. Sets or series or . . . Yes, with something intervening between the two. Correct. So, to be fair, whether we say it's a series or . . . Point being is that there is something intervening between various shots. Correct. Okay. So my question was, and I want to make sure that I understand you, whether or not you agree with what your opponent said when that question was posed. And while that did come up, I don't agree that it had any bearing or was of any duration that would have had a bearing on the case. Okay. The other points, the other facts are, of course, set out as to why the officers acted in the manner that they did. And the district court in its order had the whys and becauses in determining what occurred and that would have been on page thirty-one and thirty-two of the district court's order in determining that the actions of the officers were objectively reasonable. He stated the question why and then spent two pages or so, page and a half, stating because and listing the factors that all went into the reasonableness. And it was because, because, because, because. And I believe that that is a very telling statement or statements from the court as to why his finding of objective reasonableness was made. And we had the issue raised about alternatives and I believe Judge Oldham, you asked about what would you have done to counsel had you been in that situation. And whereas the answer about you don't shoot a fleeing suspect who's not endangering anyone is obviously correct. At the same time, any alternatives to what the officers did, if what the officers did was reasonable, then any alternatives, even if those alternatives were reasonable, aren't relevant or considered. I thought these officers were found to have violated a regulation that says you're not supposed to shoot at a moving vehicle. But that was, there was an additional internal finding which was the next part of that is that that as well is not relevant to the constitutional questions, an internal finding. Of course, that's the Scott v. Harris case does address that. But for purposes of this, our case, we really are dealing very much so with the Harmon v. City of Arlington situation which is very, very much the same and recites standards, explains and analyzes them in great detail. And while we have those findings, Your Honor, about the internal affairs findings, that in fact was not a reason or a basis for determining the reasonableness of the officers. So in going back for just a moment to the Scott case, the Scott v. Harris on the videos, I believe I've stated this, but they also very clearly said that in that case and their holding was based on the fact that the difference in the video and the testimony of the officers was blatantly different. And I think that's very important here because we don't have a similar blatant difference. Okay. All right. Thank you. Thank you. Ms. White, you'd like rebuttal time? Thank you. The opposing counsel has focused on Scott v. Harris requiring a quote-unquote blatant discrepancy. And I would disagree that that's really what Scott v. Harris is talking about. Scott v. Harris just says the video is objective evidence and we believe the video to the extent what you say is different than what the video shows. And to the extent that the officers try and say we thought people were behind the car, the video shows people were not behind the car. And that's the end of the story. You have to consider the video and the video is objective evidence and it's neutral evidence and it's unbiased evidence. And I don't really know what else to say about it. It is what it is. Opposing counsel also says that qualified immunity, what you're doing is taking into account what the officer knew. And so when he's talking about the subjective intent, he says we have to take into account what the officers knew. That is true, but what you're doing with a reasonable officer, I've kind of explained it as you take yourself and you're the acting officer, you put a reasonable officer's brain inside your body and you think, what would a reasonable officer do? And so it's not just what you knew, it's what you should have known. It's what a reasonable officer would know in that situation. And so, yes, we take into account dispatch calls that you receive, information you might have about the person in the car, whether or not they have a weapon. But we also take into account in a reasonable officer in that scenario, what would they know, what would they notice, what would they pay attention to? And the issue here is the objective evidence shows there was no one behind the vehicle, and so now we have a fact dispute as to whether a reasonable officer would have known that. Would a reasonable officer be able to see behind the car and would a reasonable officer have done that? So here's the thing I'm hung up on, and it's the clearly established law prong. So none of that is present in Little, right? In Little, the shots go into the back window of the car as it's driving away. There's none of this question about somebody behind or back. I'm sorry, there's no one behind or to the side, right? So here you have big factual distinctions from Little, like just focus with me on just clearly established law for a second. So in Little, there's no one behind the car. The bullets go in the back window. Here, they're at least seven seconds before the first shot. We all agree because the video shows there are at least two officers behind the vehicle. The car's moving. It's different. Little doesn't involve this parking lot thing. Like there's just a bunch of different distinctions, and the bullets don't go through the back. They go through the side. So Little is really different. So what I'm struggling with is what are you asking us to say? A reasonable officer would know from Little, don't shoot here. Or are you asking us to say, no, this is just obvious. Like any reasonable officer would have known, don't pull the trigger. Those are two different ways to get around qualified immunity, but I'm not clear on where you are. I would, not to dodge the question, but I'm going to say both. Sure, and that's totally reasonable. I think that because we objectively know there is no danger, I think at this summary judgment stage, we cannot have clearly established law that says you can shoot when there is no danger. And because we objectively know there is no danger, there is no allowed shooting. What I think Little establishes in terms of clearly established law is that the distance and the speed of the vehicle, or I guess the distance and the location of the vehicle, are the important factors in determining whether or not you are in danger. And Little, obviously the car is three or four blocks down the road before he shoots, but that's the analysis is we need to look at the distance and danger. And Edwards does the same thing. Edwards says. Just to be clear, we can't talk about Edwards. The Fifth Circuit precedent squarely prohibits you. Henderson v. Harris County specifically says you can't use a post-event case to bootstrap pre-event clearly established law. Says it squarely holds it, binds us. Even if I agreed with you, we would be prohibited from talking about Edwards. So we can only talk about Little. And the thing I'm struggling with is shooting a car blocks down the road through the back window bears literally no resemblance to shooting a car in a close. You might be right that it was unreasonable. I'm not disagreeing with you. What happened here is tragic. It's just that you're losing me when you insist on comparing shooting a car multiple blocks down the road to shooting a car within feet of officers in a closely confined parking lot. They're different. And so what I'm asking you is can you help me understand how you win anyway? Saying they're the same just strikes me as a nonstarter. To clarify, I'm not relying on Edwards as Edwards being clearly established precedent. When I'm talking about Edwards, what I'm saying is Edwards said there was already clearly established law. And Edwards relies on Little. And what I'm saying is that Henderson v. Harris County specifically says that move is foreclosed. You cannot say because there is a case that says it was clearly established, we get to use the second one. You can only use the first one. Because Edwards does the same analysis of Little as what I think would be appropriate here. Because Edwards, same kind of distance scenario, and Edwards says Little is binding precedent. And I think because we are factually similar to Edwards, the same reasoning that was used to apply Little to Edwards can be used to apply Little to this case. Are you relying on Garner? Yes. I mean, I think Garner is always. But I think Garner tends to be more of an obvious, or it can be obvious. Was there a car in Garner? Huh? Was there a car in Garner? I don't think so, yeah. Garner to me is always the kind of standard qualified immunity case that we cite to at the very beginning. But Garner stands for the proposition that you cannot use deadly force when there is no threat. But Little stands for the proposition that you have to analyze the danger that is posed by the vehicle and you cannot shoot someone just because they're fleeing. And so if you look at the cases that the district court relied on, that was Harmon and Hathaway. And in both of those cases, so in Harmon the officer is hanging off the side of the car, and in Hathaway he is struck by the car. And we don't have that scenario here. We have a factual scenario where everyone agrees there is no danger. Okay. Counsel, let me make sure that there are no more questions before we. . . Okay. Thank you, counsel. Thank you for your briefing and your argument here today. The matter will be considered submitted. Thank you. Do you want to take a break?